IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.

DONALD TERRY DUBOSE
 a/k/a "Terry Dubose"
ELWOOD LADON WEST
 a/k/a "Woody West"
 and
FRANK ALFRED BAKER
_____/

SEALED
INDICTMENT

5:13cr26-RS

THE GRAND JURY CHARGES:

COUNT ONE

I. INTRODUCTION

At all times material to this Indictment:

A.  The Temporary Liquidity Guarantee Program

1.  In the fall of 2008, the United States economy was in a decline and the Federal Deposit Insurance Corporation ("FDIC"), an independent agency of the United States, was focused on trying to create economic-stabilization programs.

2.  Among the programs set up at that time by the FDIC was the Temporary Liquidity Guarantee Program ("TLGP"). The goal of the TLGP was to improve liquidity in the bank-to-bank lending market. The program was a specific response to the

uncertainty that was causing banks to stop lending generally and, importantly, to stop lending to each other.

3. The TLGP applied to financial institutions, including bank-holding companies. Under the TLGP, the FDIC would guarantee a loan, up to a qualifying amount, issued by a lending financial institution (the "lender") to an eligible financial institution (the "borrower") between October 14, 2008, and June 30, 2009. The guarantee allowed the lender to make a loan to a borrower with the guarantee that, if the borrower defaulted on the loan, the FDIC would repay the lender the outstanding balance on the loan plus any interest owed.

4. The amount the FDIC would guarantee under the TLGP was set at 125% of the borrower's (a) senior unsecured debt; (b) that was outstanding as of September 30, 2008; and (c) scheduled to mature before June 30, 2009 (collectively "outstanding-unsecured debt").

5. The TLGP required the borrower to: (a) execute the TLGP Master Agreement, which noted that a loan made under the program was guaranteed by the FDIC; (b) execute the TLGP Election Form, in which the borrower stated its participation in the program and certified its outstanding unsecured debt for purposes of determining the amount of the FDIC guarantee (the "debt-guarantee limit"); (c) certify to the FDIC the amount of debt-guarantee limit; (d) report to the FDIC any loan made under the TLGP; and (e) pay the assessed fee required for any loan made under the TLGP.

### B. The Relevant Financial Institutions

6. Coastal Community Investments ("Coastal") was a Federal Reserve regulated bank-holding company, owning all of the stock of two financial institutions: (a) Coastal Community Bank ("CCB"), based in Panama City Beach, Florida, and regulated by the FDIC; and (b) Bayside Savings Bank ("Bayside"), based in Port St. Joe, Florida, and regulated by the Office of Thrift Supervision ("OTS").

7. RBC Bank (USA) was a United States subsidiary of the Royal Bank of Canada with operations in Raleigh, North Carolina. In or about April 2008, RBC purchased all of the stock of First American Bank, which was based in Birmingham, Alabama. Collectively, these financial institutions are hereinafter referred to as "RBC."

8. CenterState Bank of Florida, N.A. ("CenterState") was a federally chartered national bank based in Davenport, Florida.

### C. The Defendants

9. **DONALD TERRY DUBOSE** was the Chairman and Chief Executive Officer ("CEO") of Coastal, the CEO and President of CCB, a member of Coastal's Board of Directors, and the second largest Coastal shareholder.

10. **FRANK ALFRED BAKER** was an attorney representing Coastal, a member of Coastal's Board of Directors, and the largest Coastal shareholder.

11. **ELWOOD LADON WEST** was the Chief Financial Officer ("CFO") for Coastal and CCB and was a Coastal shareholder.

### D. The RBC Loan

12. On or about October 25, 2007, defendants **DONALD TERRY DUBOSE** and **ELWOOD LADON WEST** requested that RBC make a $3,000,000.00 loan to Coastal, which was secured with 100% of the stock of CCB and Bayside and had a sixty-day term, for the purpose of repaying a dividend that Bayside improperly issued to Coastal (the "RBC Loan").

13. On or about December 4, 2007, defendants **DONALD TERRY DUBOSE** and **ELWOOD LADON WEST** approved a commitment letter from RBC, which stated that the RBC Loan would be secured by 100% of the common stock of CCB and Bayside.

14. On or about December 18, 2007, defendant **DONALD TERRY DUBOSE** signed, among other documents: (a) a Term Note for the RBC Loan, which stated that the loan was secured; and (b) a Credit Agreement for the RBC Loan, which stated that the loan was secured.

15. On or about December 26, 2007, defendant **FRANK ALFRED BAKER** prepared and sent a letter to RBC for the RBC Loan, in which **BAKER** stated that: (a) Coastal was the record owner of 100% of the shares of stock of CCB and Bayside; (b) Coastal had the authority to own the "Pledged Stock;" and (c) the stock was not subject to any security interest, pledge, lien, or encumbrance of any kind, except in favor of RBC.

16. On or about December 27, 2007, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** received a

loan-settlement statement for the RBC Loan, which stated that the RBC Loan was secured by the stock of CCB and Bayside.

17. On or about February 26, 2008, defendants **ELWOOD LADON WEST** and **DONALD TERRY DUBOSE** sent an email to RBC, noting that the RBC Loan was due on March 2, 2008, and requesting an extension to May 2008 to repay this debt.

18. On or about April 24, 2008, defendants **ELWOOD LADON WEST** and **DONALD TERRY DUBOSE** requested, and were granted, an additional loan extension for the RBC Loan to July 2, 2008.

19. On or about August 25, 2008, defendants **ELWOOD LADON WEST** and **DONALD TERRY DUBOSE** again requested, and were again granted, a loan extension for the RBC Loan to October 5, 2008.

20. On or about October 5, 2008, defendants **DONALD TERRY DUBOSE**, **ELWOOD LADON WEST**, and **FRANK ALFRED BAKER** were notified by RBC that the RBC Loan had been placed in default, thus giving RBC the ability to exercise its right to take the pledged stock and potentially rendering defendants' shares in Coastal worthless.

21. On or about October 5, 2008, defendants **DONALD TERRY DUBOSE**, **ELWOOD LADON WEST**, and **FRANK ALFRED BAKER** were notified by RBC that a real-estate loan for the properties in which defendants **DUBOSE** and **BAKER** held ownership interest and upon which CCB branches were located was also in default and would be called, unless the RBC Loan was repaid by December 31, 2008.

## II. THE CHARGE

Between in or about September 2007 and in or about August 2010, in the Northern District of Florida and elsewhere, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and
**FRANK ALFRED BAKER,**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons to commit offenses against the United States, namely:

(a) To devise a scheme to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent, and for the purpose of executing this scheme, caused wire communications to be transmitted in interstate commerce, in violation of Title 18, United States Code, Section 1343;

(b) To make a false statement or report to the FDIC for the purpose of influencing the action of the FDIC, in violation of Title 18, United States Code, Section 1014; and

(c) To make and present, and cause to be made and presented, to the FDIC, a claim against the United States, knowing the claim to be false, fictitious, and fraudulent, in violation of Title 18, United States Code, Section 287.

### III. MANNER AND MEANS

It was part of the conspiracy that:

1. Defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** were under pressure from RBC to repay the RBC Loan and thus prevent RBC from foreclosing on 100% of the stock of CCB and Bayside, which secured the RBC Loan, as well as foreclosing on real estate upon which CCB branches were located.

2. To prevent the foreclosures, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** sought to fraudulently obtain an FDIC guarantee for a loan under the TLGP to repay the RBC Loan.

3. Defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** falsely certified to the FDIC that Coastal had $3,000,000.00 in outstanding-unsecured debt that qualified Coastal for a loan guarantee under the TLGP, when they knew that this debt was the RBC Loan, which was secured and did not qualify as outstanding-unsecured debt.

4. Defendants **FRANK ALFRED BAKER, DONALD TERRY DUBOSE,** and **ELWOOD LADON WEST** prepared several versions of a so-called opinion letter that was designed to offer assurances sufficient for CenterState to make a $3,750,000.00 loan to Coastal under the TLGP (the "TLGP Loan") and allow Coastal to repay the RBC Loan, avoid any direct reference to the existing RBC Loan that clearly did not qualify as outstanding-unsecured debt, and offer CenterState sufficient legal defense in the event Coastal defaulted on the TLGP Loan.

5. Defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** obtained the TLGP Loan from CenterState and used the proceeds to repay the RBC Loan.

6. Defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** faced with Coastal's impending default on the TLGP Loan and to perfect the FDIC guarantee of the TLGP Loan, fraudulently: (a) certified that Coastal's debt-guarantee limit under the TLGP was $3,750,000.00; (b) executed the TLGP Master Agreement; (c) reported the TLGP Loan to the FDIC; and (d) paid the assessed fee required for a loan made under the TLGP.

7. Upon Coastal's default on the TLGP Loan, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** caused CenterState to submit a fraudulent claim to the FDIC for payment on the guarantee of the TLGP Loan.

## IV. OVERT ACTS

In furtherance of the above-referenced conspiracy and to effect the objects of the conspiracy, the defendants and other persons did perform, and cause to be performed, the following overt acts:

1. On or about October 16, 2008, defendant **DONALD TERRY DUBOSE** told defendant **ELWOOD LADON WEST** that a bank-holding company could receive an FDIC guarantee, pursuant to the TLGP, for a loan up to 125% of the bank-holding company's outstanding-unsecured debt.

8

2. On or about October 22, 2008, defendants **DONALD TERRY DUBOSE** and **ELWOOD LADON WEST** told CenterState that Coastal had the RBC Loan, which needed to be repaid by the end of 2008, and asked CenterState to consider making Coastal an FDIC-guaranteed loan under the TLGP to allow Coastal to make the repayment.

3. On or about November 13, 2008, defendants **DONALD TERRY DUBOSE** and **ELWOOD LADON WEST**, along with one of defendant **DUBOSE**'s relatives, met with Centerstate's management and further discussed CenterState making Coastal an FDIC-guaranteed loan under the TLGP.

4. On or about December 4, 2008, defendant **DONALD TERRY DUBOSE** gave defendant **ELWOOD LADON WEST** additional information about the TLGP that again highlighted the TLGP's outstanding-unsecured-debt requirement.

5. Also on or about December 4, 2008, defendants **DONALD TERRY DUBOSE** and **ELWOOD LADON WEST** filed the TLGP Election Form with the FDIC in Virginia through the FDIC Connect electronic system, and on the Election Form and referring to the RBC Loan, falsely certified that Coastal had $3,000,000.00 in outstanding-unsecured debt.

6. On or about December 5, 2008, to conceal the false certification to the FDIC, defendant **DONALD TERRY DUBOSE** called an RBC loan officer ("RBC's Loan Officer") and stated that the RBC Loan had to be unsecured for Coastal to qualify for a loan under the TLGP that would repay the RBC Loan.

7. On or about December 7, 2008, defendant **ELWOOD LADON WEST** received an email from RBC's Loan Officer stating that the RBC Loan was secured by the stock of CCB and Bayside and telling defendant **WEST** to correct any misimpression that defendant **DONALD TERRY DUBOSE** had about whether the RBC Loan was secured; on the following day, in response to RBC's management's concern that Coastal did not qualify for the TLGP and would not repay the RBC Loan, defendant **DUBOSE** falsely told RBC's management that CenterState would make Coastal an unsecured loan without the FDIC guarantee under the TLGP.

8. On or about December 10, 2008, defendant **ELWOOD LADON WEST** emailed Coastal's 2004, 2005, 2006, and 2007 consolidated audited financial statements to a loan officer with CenterState, but omitted the accompanying notes, which showed that the RBC Loan was secured.

9. On or about December 12, 2008, defendant **ELWOOD LADON WEST** sent defendant **FRANK ALFRED BAKER** the TLGP Final Rule to review so defendant **BAKER** could prepare a letter, required by CenterState, stating that Coastal complied with and was eligible to participate in the TLGP (an "opinion letter").

10. Between December 19, 2008, and December 30, 2008, defendant **FRANK ALFRED BAKER** prepared several versions of an opinion letter, with the last version finally accepted by CenterState stating that, under the terms of the TLGP, the TLGP Loan was "guaranteed by the FDIC."

11. On or about December 31, 2008, defendant **DONALD TERRY DUBOSE** signed CenterState's commercial loan application for the TLGP Loan from CenterState to Coastal and certified the corporate resolution to borrow.

12. On or about December 31, 2008, defendant **ELWOOD LADON WEST** signed the promissory note, the business-loan agreement, the disbursement request and authorization for the TLGP Loan, and the corporate resolution to borrow.

13. On or about December 31, 2008, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** caused CenterState to fund the TLGP Loan to Coastal in the amount of $3,750,000.00.

14. On or about December 31, 2008, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** used the TLGP Loan proceeds to repay the RBC Loan by causing CenterState to wire $3,000,000.00 from CenterState in Florida to RBC in North Carolina.

15. On or about December 31, 2008, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** caused CenterState to wire the balance of the TLGP Loan proceeds of $750,000.00 from CenterState in Florida, through the Federal Reserve in New York, to Coastal in Florida.

16. Between in or about January 2009 and in or about March 2009, notwithstanding the repayment of the RBC Loan, Coastal's condition continued to deteriorate; desiring to avoid losses to himself and his family, defendant **DONALD TERRY DUBOSE** fraudulently sold and converted Coastal stock owned by him and his family members to unwitting investors by misrepresenting the nature of the stock,

11

misrepresenting Coastal's financial condition, and providing loans from CCB to finance the purchases of Coastal stock.

17. On or about June 1, 2009, and after repeated requests by CenterState that Coastal comply with the TLGP's procedural requirements, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** emailed, or caused to be emailed, to the FDIC the executed TLGP Master Agreement, which stated that the TLGP Loan was guaranteed by the FDIC.

18. On or about June 3, 2009, and again after repeated requests by CenterState that Coastal comply with the TLGP's procedural requirements and perfect the FDIC guarantee, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST,** and **FRANK ALFRED BAKER** falsely certified, through the FDIC Connect electronic system, that: (a) Coastal's debt-guarantee limit under the TLGP was $3,750,000.00, which was 125% of the $3,000,000.00 RBC Loan; and (b) the effective date of the debt-guarantee limit was September 30, 2008.

19. On or about June 10, 2009, defendant **ELWOOD LADON WEST** received a Certified Statement Invoice from the FDIC, generated based on the information provided by Coastal through FDIC Connect and listing: (a) Coastal's "Reported Outstanding Senior Unsecured Debt as of September 30, 2008" was $3,000,000.00; (b) the "Total Amount of Guaranteed Debt Reported This Period" was $3,750,000.00; and (c) the "Guaranteed Debt Assessment Amount Due This Period" from Coastal was $133,869.75.

20. On or about June 12, 2009, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST**, and **FRANK ALFRED BAKER** made an electronic payment of $133,869.75 from Coastal in Florida to the FDIC in Virginia to pay the assessment due under the TLGP for the TLGP Loan.

21. On or about July 3, 2009, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST**, and **FRANK ALFRED BAKER** sent a letter to CenterState, in which defendant **BAKER** stated that Coastal had complied with the TLGP's procedural requirements and reiterated that the TLGP Loan was "guaranteed by the FDIC," knowing that Coastal had no outstanding unsecured debt and could not qualify for the FDIC guarantee under the TLGP.

22. On or about June 30, 2010, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST**, and **FRANK ALFRED BAKER** notified CenterState that Coastal would not make further payment on the TLGP Loan, thus causing the TLGP Loan to be called in default.

23. On or about July 7, 2010, defendants **DONALD TERRY DUBOSE, ELWOOD LADON WEST**, and **FRANK ALFRED BAKER** caused CenterState to file a fraudulent claim to the FDIC for payment of the full amount due on the TLGP Loan, plus interest.

24. On or about July 30, 2010, CCB and Bayside failed, and the FDIC was appointed receiver; thereafter, on or about August 13, 2010, the FDIC paid CenterState on the guarantee of the TLGP Loan by wiring $3,805,833.34 in principal and interest from the FDIC in Virginia to CenterState in Florida.

All in violation of Title 18, United States Code, Sections 1349 and 371.

## COUNTS TWO THROUGH EIGHT

The allegations contained in Section I, paragraphs 1 through 21, Section III, paragraphs 1 through 7, and Section IV, paragraphs 1 through 24 of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

Between in or about September 2007 and in or about August 2010, in the Northern District of Florida and elsewhere, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and
**FRANK ALFRED BAKER,**

did knowingly and willfully devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing this scheme, did knowingly cause wire communications to be transmitted in interstate commerce as set forth below:

| COUNT | DATE | COMMUNICATION | WIRE TYPE |
|---|---|---|---|
| TWO | December 4, 2008 | TLGP Election Form | Electronic Filing |
| THREE | December 31, 2008 | $3,000,000.00: CenterState to RBC from TLGP Loan | Wire Transfer |
| FOUR | December 31, 2008 | $750,000.00: CenterState to Coastal from TLGP Loan | Wire Transfer |
| FIVE | June 3, 2009 | TLGP Master Agreement | Email |
| SIX | June 3, 2009 | Certification of Debt-Guarantee Limit | Electronic Filing |

| COUNT | DATE | COMMUNICATION | WIRE TYPE |
|---|---|---|---|
| SEVEN | June 12, 2009 | $133,869.75: Coastal to FDIC for TLGP Assessment | Wire Transfer |
| EIGHT | August 13, 2010 | $3,805,833.34: FDIC to CenterState for Guarantee | Wire Transfer |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE

The allegations contained in Section I, paragraphs 1 through 21, Section III, paragraphs 1 through 7, and Section IV, paragraphs 1 through 24 of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

On or about December 4, 2008, in the Northern District of Florida and elsewhere, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and
**FRANK ALFRED BAKER,**

knowingly made, and caused to be made, a false statement or report to the FDIC for the purpose of influencing the action of the FDIC in connection with a loan guarantee, namely, an Election Form for the FDIC's Temporary Liquidity Guarantee Program, which falsely stated that Coastal Community Investments, Inc., had $3,000,000.00 in outstanding senior unsecured debt as of September 30, 2008, when, as the defendants well knew, Coastal Community Investments, Inc., did not have $3,000,000.00 in outstanding senior unsecured debt as of September 30, 2008.

15

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT TEN

The allegations contained in Section I, paragraphs 1 through 21, Section III, paragraphs 1 through 7, and Section IV, paragraphs 1 through 24 of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

On or about June 1, 2009, in the Northern District of Florida and elsewhere, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and
**FRANK ALFRED BAKER,**

knowingly made, and caused to be made, a false statement or report to the FDIC for the purpose of influencing the action of the FDIC in connection with a loan guarantee, namely, the Master Agreement for the FDIC's Temporary Liquidity Guarantee Program, which falsely stated that the December 31, 2008, loan from CenterState Bank, N.A., to Coastal Community Investments, Inc., for $3,750,000.00 was guaranteed by the FDIC, when, as the defendants well knew, this loan did not meet the requirements for the FDIC guarantee under the TLGP.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT ELEVEN

The allegations contained in Section I, paragraphs 1 through 21, Section III, paragraphs 1 through 7, and Section IV, paragraphs 1 through 24 of Count One are

hereby realleged and incorporated by reference as if fully set forth herein.

On or about June 3, 2009, in the Northern District of Florida and elsewhere, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and
**FRANK ALFRED BAKER,**

knowingly made, and caused to be made, a false statement or report to the FDIC for the purpose of influencing the action of the FDIC in connection with a loan guarantee, namely, a false certification that the guaranteed-debt limit for Coastal Community Investments, Inc., under the FDIC's Temporary Liquidity Guarantee Program was $3,750,000.00 as of September 30, 2008.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT TWELVE

The allegations contained in Section I, paragraphs 1 through 21, Section III, paragraphs 1 through 7, and Section IV, paragraphs 1 through 24 of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

On or about June 3, 2009, in the Northern District of Florida and elsewhere, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and

**FRANK ALFRED BAKER,**

knowingly made and presented, and caused to be made and presented, to the FDIC, a material false claim against the United States, namely, a demand by CenterState Bank, pursuant to the FDIC's Temporary Liquidity Program, that the FDIC pay on a guarantee of a $3,750,000.00 from CenterState Bank to Coastal Community Investments, which the defendants knew to be false, fictitious, and fraudulent.

In violation of Title 18, United States Code, Sections 287 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Eleven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the United States pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

Upon the conviction of the violations alleged in Counts One through Eleven of this Indictment, the defendants,

**DONALD TERRY DUBOSE,**
a/k/a "Terry Dubose,"
**ELWOOD LADON WEST,**
a/k/a "Woody West,"
and
**FRANK ALFRED BAKER,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, any and all property, real or personal, involved in the

aforementioned offense and all property traceable to such property as a result of such violation.

If any of the property described above as being subject to forfeiture pursuant to Count One of the Indictment, as a result of any act or omission of any defendant:

    i. cannot be located upon the exercise of due diligence;

    ii. has been transferred or sold to, or deposited with, a third person;

    iii. has been placed beyond the jurisdiction of this Court;

    iv. has been substantially diminished in value; or

    v. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the property subject to forfeiture under the provisions of Title 21, United States Code, Section 853(p).

A TRUE BILL:

**REDACTED**

Deputy FOREPERSON

7/9/2013
DATE

_Pamela Marsh_
PAMELA C. MARSH
United States Attorney

_Gayle E. Littleton_
GAYLE E. LITTLETON
Assistant United States Attorney